UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF MOTOROLA CELLULAR PHONE, ATF CASE 776025-23-0084, ITEM 20, LOCATED AT ATF OFFICE, 5726 MARLIN ROAD, SUITE 316, CHATTANOOGA, TN. | Case No. 1:23-mj-__369__ |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

### INTRODUCTION AND AGENT BACKGROUND

This affiant, Stephen Gordy, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since September 10, 2001. I am currently assigned to the Chattanooga, Tennessee Field Office. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigators Training Program. I am a graduate of the ATF National Academy's New Professional Training Program. I have completed ATF's International Firearms Trafficking Training. I am an instructor at ATF National Academy,

1

where I instruct Firearms Trafficking. In the performance of my duties, I have conducted investigations of violations of state and federal laws, including the illegal possession of firearms, firearms trafficking, and other federal crimes. As a result of my training and experience as an ATF Special Agent, I am familiar with federal criminal laws relating to the illegal possession of firearms, firearms diversion, the unlicensed dealing of firearms without a federal firearm license (FFL) and firearms trafficking. The information contained in this affidavit has been obtained by your affiant through personal knowledge and information related to your affiant by fellow law enforcement officers.

3. This affidavit is submitted in support of a search warrant for the Motorola cellular phone, identified as item #20 in ATF case 776025-23-0084. Device 1 belongs to Jeffery Joseph BUSH and is located at the ATF Office, 5726 Marlin Road, Suite 316, Chattanooga, TN. The device is hereinafter named, "Device 1".

4. This affidavit is made in support of a warrant to search for evidence of violations of:

    a. Persons engaged in the unlicensed dealing of firearms without a Federal Firearm License, in violation of Title 18 U.S.C. § 922(a)(1)(A);

    b. The possession and transfer of a firearm, not registered in the National Firearms Registration and Transfer Record, in violation of Title 26 U.S.C. § 5861(d); and

    c. Providing false information to a federal firearm licensee in violation of Title 18 U.S.C. § 922(a)(6).

5. Based on my training and experience, I know that when a continuing series of federal firearm law violations are involved, other supporting items and materials are usually

2

present. These supporting items commonly associated with these violations include, but are not limited to:

  a. books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, sale, and distribution of firearms;

  b. addresses and telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their associates, typed or written by hand;

  c. cellular telephones, including the electronic address book, stored memory feature, and the SIM card (or similar type of electronic data storage card) of the cellular telephone. Cellular telephones often store photographs of firearms. Cellular telephones are used to keep a list of names and numbers of customers and suppliers in the electronic address books within the cellular telephones;

  d. firearms for sale and trade, including but not limited to handguns, pistols, revolvers, rifles, shotguns, and other weapons made from firearms, including photographic evidence of firearms;

  e. Any and all other material evidence of violations of Title 18 U.S.C. § 922(a)(1)(A), Title 26 U.S.C. § 5861(d), and Title 18 U.S.C. § 922(a)(6).

6. Based on my training and experience, I know that when a continuing series of federal firearm law violations is involved, it is also common for persons to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. I know that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants or coconspirators. Cellular

phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them to keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

7. This affidavit is intended to support probable cause but is not intended to convey all the facts of the entire investigation.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8. The search warrant requested by this affidavit is for Device 1 which is a Motorola cellular phone, identified as item #20 in ATF's case 776025-23-0084. The phone belongs to Jeffery Joseph BUSH and is located at the ATF Office, 5726 Marlin Road, Suite 316, Chattanooga, TN.

9. The applied-for warrant would authorize the forensic examination of Device 1 for the purpose of identifying electronically stored data particularly described in Attachment B.

4

10. Device 1 is currently in the lawful possession of the ATF and came into the ATF's possession on November 14, 2023 during the execution of federal search warrants described herein. Device 1 is currently in the evidence vault at ATF's Office, 5726 Marlin Road, S-316, Chattanooga, TN. In my training and experience, I know Device 1 has been stored in a way that its contents are, to the extent material to this investigation, in substantially the same state as they were when Device 1 first came into the possession of ATF.

## PROBABLE CAUSE

11. Your affiant submits that probable cause exists to believe that Jeffery BUSH has been involved in a continuing series of federal firearm law violations in the Eastern District of Tennessee, and that he utilizes Device 1 for that continuing criminal activity.

12. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is investigating the violation of federal laws, to include persons engaged in the unlicensed dealing of firearms without an FFL; the individual is known to law enforcement as Jeffery BUSH. Based on my familiarity with this investigation, I allege there is probable cause to believe the above offenses have been committed.

13. A review of ATF National Tracing Center (NTC) multiple sales data shows that since December 6, 2021, Jeffery Joseph BUSH, has purchased more than 100 handguns on more than 30 different dates from different federal firearm licensees. Based on his training and experience, the affiant knows the firearm purchases are suspicious due to the repetitive purchase of the same make/model and the repetitive purchase of inexpensive, non-collectable firearms.

14. Since July 8, 2023, ATF Special Agents, acting in undercover capacities, purchased 15 firearms from Jeffery BUSH on five different dates at Johnson's Highway 55 Flea Market in Manchester, TN. Jeffery BUSH occupies three sales booths which are combined into

one large booth, collectively labeled as 109. During each undercover operation, ATF Special Agents have observed more than twenty firearms for sale within Jeffery BUSH's booths and BUSH's firearm inventory was different each time ATF Special Agents made undercover purchases. This sign is in his booths:



15. On July 8, 2023, in reference to the firearms he had for sale, Jeffery BUSH stated that he was trying to get rid of them. The affiant, acting in an undercover capacity, asked BUSH why. BUSH responded, "So I can get more in." BUSH sold the affiant two firearms on July 8, 2023.

16. On September 9, 2023, an ATF Confidential Informant (CI) in the presence of an ATF Special Agent (SA) purchased a Palmetto State Armory PA-15 short-barreled rifle (SBR). The AR style firearm had a 12" barrel length and was fitted with a shoulder stock. Because this SBR had a barrel of less than 16 inches in length, it was required to be registered to BUSH in the National Firearms Registration and Transfer Record. A check of the National Firearms Registration and Transfer Record showed the firearm has never been registered, which is a violation of 21 U.S.C. § 5861(d).

6

17. On November 1, 2023, an ATF Special Agent (SA) contacted BUSH via cellular telephone assigned call number 931-205-3741 (Target Telephone 1/TT-1), a number previously provided by BUSH. In the conversation, the ATF SA asked BUSH about a pink or Tiffany blue gun. BUSH said to call back on Friday because he only sells at the flea market on Saturday and Sunday and he would know for sure if he would have it then.

18. On Wednesday, November 8th, 2023, an ATF SA contacted BUSH on TT-1 via text message about the firearm. BUSH, using TT-1, texted to the ATF SA a photo of a Taurus G2C that was blue in color. BUSH, using TT-1, further advised via text that the price of the firearm was $350.00.

19. On November 6, 2023, United States Magistrate Judge Christopher H. Steger signed search warrants related to this investigation in case numbers 1:23-mj-339, 1:23-mj-340, and 1:23-mj-341.

20. On November 12, 2023, an ATF SA contacted BUSH on TT-1 via text message about picking up the firearm on Monday November 13, 2023. In the text conversation using TT-1, BUSH told the ATF SA to come to his shop in Shelbyville. BUSH further provided the address of 912 Sevier Street, Shelbyville, TN 37160. BUSH further advised that he would sell the firearm for $300 for the ATF SA's having to come to the shop.

21. On November 13, 2023, an ATF SA met Jeffery BUSH at Cherokee Diversified, 912 Sevier Street, Shelbyville, TN. BUSH was paid $300 for Taurus G2C 9mm pistol, serial number TMD58310. Jeffery BUSH told the ATF SA to call him if the ATF SA needed any other firearms.

22. On November 14, 2023, during the execution of the federal search warrants described herein, multiple firearms and Device 1, among other items, were seized. BUSH was

7

interviewed; he was advised of his *Miranda* rights, which he acknowledged he understood and waived. BUSH acknowledged that the cell phone (Device 1) recovered in his office at Cherokee Diversified was his and he provided the passcode to unlock the phone. It is believed that Target Telephone 1/TT-1 is associated with Device 1.

23. On November 14, 2023, an ATF form 4473 was obtained from Don's Pawn Shop in Shelbyville, TN. The form shows that on Friday, November 10, 2023, Jeffery Joseph BUSH purchased five firearms, to include Taurus G2C 9mm pistol, serial number TMD58310. On ATF Form 4473, Question 21a, states:

*"Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.*

Jeffery BUSH answered YES to Question 21a.

24. At the end of Question 21, the Form 4473 states: *"I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 21.b. through 21.k. is prohibited from receiving or possessing a firearm. I understand that a person who answers "yes" to question 21.l.1. is prohibited from receiving or possessing a firearm, unless the person answers "yes" to question 21.l.2. and provides the documentation required in 26.d. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable*

8

*as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law."*

## TECHNICAL TERMS

25. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage

9

medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

10

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

26. Based on my training, experience, and research, I know that Device 1 has capabilities that allow it to serve a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

11

Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

28. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how Device 1 was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on Device 1 because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

12

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant would permit the examination of the device. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31. Based on the facts detailed in this affidavit, I respectfully submit that there is probable cause to believe that evidence of the violations of Title 18 U.S.C. § 922(a)(1)(A), Title 26 U.S.C. § 5861(d), and Title 18 U.S.C. § 922(a)(6) will be found in the search and collection of the data from Device 1. Therefore, I request a search warrant authorizing the examination of Device 1 (Described in Attachment A) to seek the items described in Attachment B.

{SIGNATURES ON FOLLOWING PAGE}

Respectfully submitted,

*Stephen Gordy* (signature)

Stephen Gordy
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed before me this 12th day of December 2023.

_____
THE HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE